No. 12-3704
No. 12-3804

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

PACTIV CORPORATION and
PACTIV CORPORATION 2010/2011
    SEVERANCE BENEFITS PLAN,

    Plaintiffs/Counterclaim Defendants-
    Appellants/Cross-Appellees, and

REYNOLDS GROUP HOLDINGS
    LIMITED,

    Counterclaim Defendant Appellant/
    Cross-Appellee,

        v.

CHAD RUPERT,

    Defendant/Counterclaim Plaintiff-
    Appellee/Cross-Appellant.

Appeal from the
United States District Court
for the Northern District of Illinois
Eastern Division

District Court No.
1:11-cv-07247

The Honorable
William T. Hart, District Judge

—————————————————————

BRIEF OF APPELLEE/CROSS-APPELLANT
—————————————————————

| | |
|---|---|
| James B. Carroll, Esq. | Vernon P. Squires |
| Standard Bank Building | Bradley & Riley PC |
| 7800 West 95th Street | 2007 First Avenue SE |
| Second Floor East | PO Box 2804 |
| Hickory Hills, IL  60457 | Cedar Rapids, IA  52406-2804 |
| Telephone:  (708) 430-1300 | Telephone:  (319) 363-0101 |
| | |
| *Local Counsel for* | *Counsel for* |
| *Defendant/Counterclaim-* | *Defendant/Counterclaim-* |
| *Plaintiff/Appellee/Cross-Appellant* | *Plaintiff/Appellee/Cross-Appellant* |
| *Chad Rupert* | *Chad Rupert* |

**Disclosure Statement**

Appellee/Cross-Appellant Chad Rupert is an individual. The law firms whose partners and associates have appeared for Rupert are Bradley & Riley, PC, Cedar Rapids, Iowa; and James B. Carroll & Associates, Hickory Hills, Illinois.

Dated:  March 21, 2013.            _____/s/ Vernon P. Squires_____
                                   Vernon P. Squires
                                            *Counsel of Record*

# TABLE OF CONTENTS

**Page**

Disclosure Statement ...................................................................................... i

Table of Authorities ..................................................................................... iii

Jurisdictional Statement ................................................................................ 1

Statement of the Issues ................................................................................. 2

Statement of the Case ................................................................................... 3

Statement of Facts ........................................................................................ 5

Summary of the Argument ............................................................................ 8

Argument ...................................................................................................... 9

Standard of Review ..................................................................................... 10

I.     The District Court Properly Granted Declaratory Relief. ..................... 10
II.    The District Court did not rule *Sua Sponte*. ...................................... 15
III.   Rupert did not Disavow or Waive his rights under the Plan ................. 18
IV.    The District Court Erred by Rejecting Rupert's Third Party
       Beneficiary Claim. ........................................................................... 19
       a.    Pactiv's Pre-Merger Severance Agreements are Irrelevant. ........ 23
       b.    The Third-Party Disclaimer Language Doesn't Control. ............ 26
V.     The District Court Erred by Not Awarding Relief under the IWPCA. .... 27
VI.    The Merger Agreement Alternatively Constitutes an ERISA Plan. ....... 28

Conclusion .................................................................................................. 30

Certificate of Compliance with F.R.A.P. 32(A)(7) ....................................... 32

Certificate of Service .................................................................................. 33

Circuit Rule 30(d) Certificate ..................................................................... 34

Attached Required Short Appendix .............................................................. 30

## Other Authorities

*Alta Berkeley VI, C.V. v. Omneon, Inc.*,
    41 A.3d 381 (Del. Supr. 2012) ....................................................... 24, 25, 27

*Chisom v. Roemer*,
    501 U.S. 380, n.23, 115 L. Ed. 2d 348, 111 S. Ct. 2354 (1991)................... 26

*Cirulis v. Unum Corp.*,
    321 F.3d 1010 (10th Cir. 2003) ..................................................... 10, 11, 12

*Comrie v. Enterasys Networks, Inc.*,
    2004 WL 293337 (Del. Ch. 2004)......................................................... 21, 22

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995)...........................................................11, 13, 14, 29

*DCV Holdings, Inc. v. Conagra, Inc.*,
    889 A.2d 954 (Del. 2005)........................................................................ 26

*Dye v. United States*,
    360 F.3d 744 (7th Cir. 2004) .................................................................. 28

*F.W. Hempel & Co. v. Metal World, Inc.*,
    721 F.2d 610 (7th Cir. 1983) .................................................................. 23

*Halliburton Company Benefits Committee v. Graves*,
    463 F.3d 360 (5th Cir. 2006) ......................................................... 22, 29, 30

*Hoppe v. Lewis Univ.*,
    692 F.3d 833 (7th Cir. 2012) .................................................................. 10

*Insituform of N. Am., Inc.*,
    534 A.2d 257 (Del. Ch. 1987) ................................................................ 21

*Johnson v. McCuskey*,
    72 Fed. App'x. 475 (7th Cir. 2003).......................................................... 16

*Madison Realty Partners 7, LLC v. AG ISA, LLC*,
    2001 WL 406268 (Del. Ch. 2001)............................................................ 21

*Madison Services Company, LLC v. Gordon*,
    2011 WL 1231151 (D. Colo. 2011)........................................................... 14

*Metropolitan Distributors, Inc. v. Illinois Dep't of Labor*,
    449 N.E.2d 1000 (Ill. App. 1st Dist. 1983) ................................................ 27

*Nucor Corp. v. Aceros y Macquilas de Occidenta, S.A. DE C.V.*,
    28 F.3d 572 (7th Cir. 1994) .............................................................. 10, 16

*Pampered Chef v. Alexanian*,
    804 F. Supp. 2d 765 (N.D. Ill. 2011) ....................................................... 15

*Prouty v. Gores Technology*,
    18 Cal. Rptr. 3d 178 (Cal. Ct. App. 2004.) .................................20, 21, 22, 26

*RTN Investors, LLC v. RETN, LLC,*,
    2011 WL 862268 (Del. Super. 2011) ....................................................... 24

*Stamp v. Inamed Corp.*,
    777 F. Supp. 623 (N.D. Ill. 1991)............................................................ 23

*Terech v. First Resolution Mgt. Corp.*,
    854 F. Supp. 2d 537 (N.D. Ill. 2012) .......................................................... 19
*Thomas v. Pierce, Hamilton & Stern*,
    967 F. Supp. 507, n. 2 (N.D. Georgia 1997) ............................................... 26
*TKO Equipment Co. v. C&G Coal Company, Inc.*,
    863 F.2d 541 (7th Cir. 1988) ...................................................................... 18
*Triumph Packaging Group v. Ward*,
    834 F. Supp. 2d 796 (N.D. Ill. 2011) .......................................................... 15
*Williams v. Plumbers & Steamfitters Local 60 Pension Plan*,
    48 F.3d 923 (5th Cir. 1995) ........................................................................ 30
*Winsley v. Cook Cnty.*,
    563 F.3d 598 (7th Cir. 2009) ...................................................................... 16
*Zabaneh Franchises, LLC v. Walker*,
    972 N.E.2d 344 (Ill. App. 4th Dist. 2012) ................................................... 15

## Statutes

28 U.S.C. § 1291 .................................................................................................. 2
28 U.S.C. § 1367 .................................................................................................. 1
28 U.S.C. § 2201-02 ............................................................................................. 1
28 U.S.C. §§ 1331 ................................................................................................. 1
29 U.S.C. § 1002(1)(B) ......................................................................................... 8
29 U.S.C. § 1102(b)(3) ........................................................................................ 29
29 U.S.C. § 1132(a)(1)(B) ............................................................................... 1, 29
29 U.S.C. § 1132(e) .............................................................................................. 1
820 ILCS 115/1 et seq. ....................................................................................... 27
820 ILCS 115/14 ................................................................................................ 27
820 ILCS 115/2 ............................................................................................ 27, 28

## Other

*Liars, Novelists, and the Law of Defamation*,
    51 Brook. L. Rev. 233 (Winter, 1985) ........................................................ 26

## Jurisdictional Statement

Plaintiffs Pactiv Corp. ("Pactiv") and Pactiv Corporation 2010/2011 Severance Benefits Plan ("the Severance Plan") brought a declaratory judgment action against appellee/cross-appellant Chad Rupert, asking the District Court to decide: (a) whether any claim to severance benefits by Rupert, a former Pactiv employee, arises under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and is limited to asserting a claim under the Severance Plan; and (b) whether ERISA preempts any state law claim by Rupert to severance benefits, including any claim under the Illinois Wage Payment and Collection Act ("IWPCA"). Rupert filed a counterclaim against Pactiv, the Severance Plan and cross-appellee Reynolds Group Holdings Limited ("RGHL"), asserting claims to severance benefits as a third-party beneficiary under the Merger Agreement between Pactiv and RGHL, under the IWPCA, and alternatively under ERISA.

The District Court had subject matter jurisdiction of Pactiv's and the Severance Plan's declaratory judgment action under ERISA § 502(e), 29 U.S.C. § 1132(e), and 28 U.S.C. §§ 1331 (Federal question) & 28 U.S.C. § 2201-02 (declaratory judgments). The District Court had subject matter jurisdiction of Rupert's counterclaim for relief under IWPCA or other state law theories under 28 U.S.C. § 1367 (supplemental jurisdiction), and of his counterclaim for alternative relief under ERISA under ERISA § 502(e), 29 U.S.C. § 1132(e), and 28 U.S.C. § 1331 (Federal question).

On November 5, 2012 the District Court entered its Judgment and accompanying Opinion and Order in favor of Rupert, granting in part and

denying in part the parties' cross-motions for summary judgment, which Judgment disposed of all claims by all parties. On November 29, 2012 Rupert timely filed a "Motion to Amend Final Ruling to Include Prejudgment Interest," which the District Court properly treated as a motion to alter or amend the judgment under to Federal Rule of Civil Procedure 59(e). On December 11, 2012 the District Court entered its Amended Judgment (and accompanying Notification of Docket Entry) granting Rupert's Rule 59 Motion and amending the Judgment to include the prejudgment interest claimed by Rupert. On November 29, 2012, Pactiv, the Severance Plan and RGHL filed a Notice of Appeal (No. 12-3704). Pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(i), this Notice of Appeal became effective December 11, 2012, the date the District Court entered its Amended Judgment granting Rupert's Rule 59 Motion.

On December 12, 2012 Rupert timely filed his Notice of Cross-Appeal under Federal Rule of Appellate Procedure 4(a)(3) (No. 12-3804). This Court has jurisdiction of Rupert's cross-appeal under 28 U.S.C. § 1291 (final decisions of district courts).

## Statement of the Issues

1.  Whether the District Court properly entered judgment in favor of Rupert to resolve the parties' claims for declaratory relief, given that all parties asked the District Court to determine Rupert's rights to severance benefits.

2.     Whether the District Court erred by denying Rupert relief under Rupert's alternative theories, given that additional remedies exist under the Illinois Wage Payment and Collection Act.

## Statement of the Case

This case involves Rupert's claim to severance benefits following a corporate merger that displaced his employment in 2011.  Via a Merger Agreement, accompanying Severance Policy, and contemporaneous statements by Pactiv's CEO, Pactiv promised severance with no strings attached.  At the time of Rupert's termination, however, Pactiv tried to condition his receipt of benefits on Rupert signing a Separation Agreement that contained an onerous restrictive covenant. Pactiv claimed a right to withhold severance payments based on the Severance Plan, which Pactiv adopted after the Merger Agreement but which failed to disclose that a non-compete agreement would be a pre-condition to receiving severance.

Rupert refused to sign the Separation Agreement, and threatened to sue Pactiv to recover the benefits.  Pactiv and the Severance Plan then preemptively sued Rupert, filing a declaratory judgment action in the United States District Court for the Northern District of Illinois.  The declaratory judgment action asked the Court to resolve and declare the parties' rights, including, among other things, "whether the only claim for severance benefits

that Rupert may make is for severance benefits under the Severance Plan." (App. 41, ¶ 23(1).)[1]

Rupert filed counterclaims against Pactiv, the Severance Plan and RGHL. Rupert asserted rights to severance benefits under the Merger Agreement, and also sought remedies under the IWPCA. Rupert also asked for a declaration that he was entitled to severance benefits without signing the Separation Agreement. Rupert alternatively sought recovery under ERISA.

Both parties filed for summary judgment. After briefing, the District Court entered judgment in Rupert's favor and issued an opinion dated November 1, 2012. (Copies of the Judgment, Opinion and Order and Amended Judgment are attached as Rupert's Short Appendix ("SA")). The Court ruled that Rupert was entitled to benefits under the Severance Plan. In effect, the Court resolved the case by honoring the parties' requests for declaratory judgment, and by declaring that Pactiv and the Severance Plan owed Rupert approximately $100,000 in benefits. The Court rejected Rupert's alternative third-party beneficiary claim and claim under the IWPCA.

The District Court subsequently granted Rupert's request for interest, meaning the judgment totals $103,770.26 (Rupert's request for attorney's fees is stayed pending this appeal). Pactiv and the Severance Plan appealed the judgment. Rupert cross-appealed the Court's refusal to grant additional relief under the IWPCA.

---

[1] Rupert has not filed a separate Appendix. All references to the Appendix in Rupert's brief refer to the Appendix filed by the Appellants in Appeal No. 12-3704.

## Statement of Facts

Rupert worked for Pactiv for 11 years, most recently as General Manager of the Slide-Rite division. (App. 79-80, at depo. pp. 12:18-13:5.) In 2010, Pactiv announced it would merge with Reynolds Group Holdings. (*See* App. 218) Pactiv's then-Chief Executive Officer Richard Wambold told employees during an all-company meeting that they would receive severance payments if displaced by the merger. According to Rupert's testimony, which Pactiv has not challenged, "Richard Wambold stood up in front of all the employees of the corporation when he was disclosing the information about this merger agreement, and he said that according to Pactiv policy, anybody displaced by this merger is entitled to severance." (App. 429, at depo. p. 21:9-14.)

Before or contemporaneous with the merger, Pactiv made additional communications to the same effect, i.e. displaced employees would receive severance. Rupert testified:

> Everybody in the building was spending time understanding the impact of the merger to them personally, and what would happen if their job was eliminated. The CEO of the company made it clear during the all-employee meeting that people would be displaced by the merger and that severance would be paid . . . I will paraphrase the message that was delivered, the message that people heard based on the conversations, and that is, if people are displaced, the corporation will take care of you. Company policy is two weeks of severance for every year of service, not to exceed 26 weeks.

(App. 525-26, at depo. pp. 35:6-36:3; *see also* App. 432-33, at depo. pp. 44:19-45:13.)

The Merger Agreement dated August 16, 2010 and accompanying Disclosure Schedule/Severance Policy include provisions specifying an unconditional right to severance benefits for non-union employees terminated without cause during the Continuation Period. (App. 62, 137, 185.) The Merger Agreement states: "With respect to any Non-Union Employee not covered by the Company's Amended and Restated Change in Control Severance Benefits Plan for Key Executives, if Parent or Surviving Corporation terminates the employment of such Non-Union Employee during the Continuation Period, *Parent shall cause the Surviving Corporation to pay to such Non-Union Employee severance benefits as set forth in <u>Section 6.4(d)</u> of the Company Disclosure Schedule.*" (App. 185) (emphasis supplied). Consistent with the Merger Agreement, Section 6.4(d) of the disclosure schedule (also called the Severance Policy) states that a Non-Union employee terminated without cause "shall be paid" severance according to a formula. (App. 62.)

After the merger, Pactiv released Rupert from employment because Rupert declined to take a position in Appleton, Wisconsin. (App. 81-82, at depo. pp.16:12-18:19.) There is no dispute that Rupert was a Non-Union Employee terminated without cause. (App. 26, ¶ 15.) Despite having terminated Rupert without cause – meaning he was eligible for severance payments – Pactiv then demanded that Rupert sign a Separation Agreement

and Release of all Claims as a condition to receiving severance. (App. 83-86, depo. pp. 18:25-21:5)

Rupert refused to sign the Separation Agreement, because it attempted to impose restrictive covenants on Rupert that would not have allowed him to use his knowledge and experience to earn a living. (App. 85-86, depo. pp. 20:19-21:5.) Rupert also pressed Pactiv to pay the promised severance. (App. 441-45.)

Pactiv refused. It insisted that the Severance Plan required Rupert to sign the Separation Agreement. (*See* App. 445.) Rupert disagreed, given that Pactiv unconditionally had promised the benefits before the Severance Plan ever came into existence. Rupert testified:

> I don't think the [2010/2011] severance plan is material because the proxy statement doesn't mention a severance plan. Nowhere in any publically available information leading up to the merger and my separation was any severance plan presented. Proxy made certain guarantees about how employees are going to be taken care of. Richard Wambold reiterated those guarantees or pledges, whatever you want to call them, in the employee meeting that he had...

(App. 438, depo. p. 63:1-10.)

The parties' dispute about Rupert's right to benefits ultimately prompted Pactiv and the Severance Plan to file a declaratory judgment action in the Northern District of Illinois. Among other things, Pactiv and the Severance Plan asked the District Court to decide the question of whether Rupert, in order to be eligible for severance benefits, had to sign and not later

revoke a separation agreement and release of all claims "in a form acceptable" to Pactiv. (App. 41, ¶ 23.)

Rupert filed counterclaims, including a claim for declaratory relief under 29 U.S.C. § 1002(1)(B) that he was entitled to severance benefits under the Severance Plan. (App. 58-59.)

The parties do not dispute the amount of benefits Rupert would be entitled to under the Severance Policy and Severance Plan. (App. 448-49.) The calculation involves an analytical process, as opposed to a subjective calculation. (App. 434-35, at depo. pp. 55:18-56:3; App. 435-37, at depo. pp. 56:17-58:23; App. 439 at depo. pp. 64:13-24.) Excluding interest or penalties, the amount of Rupert's severance includes salary of $67,326.38, plus bonus of $32,350.20. (App. 448-49.)

### Summary of the Argument

The District Court properly determined that Rupert was entitled to severance benefits under the Severance Plan even though Rupert declined to sign the Separation Agreement. The Severance Plan fails to give notice to employees and beneficiaries that severance might be conditioned on an employee/beneficiary signing an agreement including a restrictive covenant. This is a material term, meaning Pactiv could not change the Severance Plan upon Rupert's termination. While this issue appears to be one of first impression in the Seventh Circuit, a Tenth Circuit case is directly on point and favors Rupert.

The District Court did not decide this issue *sua sponte*, as Pactiv claims. Rather, the District Court resolved exactly the issue Pactiv posed in its Amended Complaint for Declaratory Relief, which issue Rupert also raised in his Counterclaims. Pactiv's argument on this point also is irrelevant, given the de novo standard of review.

Rupert did not disavow benefits under the Severance Plan. Rupert argued that his severance benefits already had vested before Pactiv adopted the Severance Plan, meaning any purported limitation or exclusion in the Severance Plan was of no consequence. Rupert's Counterclaim also specifically alleged that he was entitled to benefits under the Severance Plan.

In addition to the District Court's reasoning, Rupert also is entitled to benefits under his alternative theories, i.e. third-party beneficiary and under the Illinois Wage Payment Collection Act.

## Argument

Rupert will address six issues: (1) the District Court correctly entered declaratory relief in Rupert's favor, because the Severance Plan failed to inform employees that severance was conditioned on a restrictive covenant; (2) the District Court did not rule *sua sponte*; (3) Rupert did not waive or disavow any claims; (4) the District Court erred by rejecting Rupert's third-party beneficiary claim; (5) the District Court erred by rejecting Rupert's claim for additional relief under the Illinois Wage Payment Collection Act; and (6) Rupert alternatively can recover under ERISA as applied to the Merger Agreement.

**Standard of Review**

The standard of review for both Pactiv's appeal and Rupert's cross-appeal is de novo. *Nucor Corp. v. Aceros y Macquilas de Occidenta, S.A. DE C.V.*, 28 F.3d 572, 578 (7th Cir. 1994) (de novo review for declaratory judgments); *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (de novo review after grant of summary judgment).

## I. The District Court Properly Granted Declaratory Relief.

The District Court correctly held that Rupert was entitled to severance benefits under the Severance Plan without signing a non-competition agreement. *See* Opinion, at 14-15. (SA, at 15-16.) The District Court reasoned that the material terms of an ERISA plan must be stated in writing, and that Pactiv and the Severance Plan failed to give notice to an ERISA beneficiary such as Rupert that a non-competition covenant could be required as a condition to receive benefits. *Id.*, at 13-14. (SA, at 14-15.) The Severance Plan merely stated that employees would be required to sign an agreement "in a form acceptable to the Company," a phrase that gives no hint that the Company would try to limit the employees' livelihood. The District Court rejected this notice as inadequate.

The District Court's reasoning properly interprets ERISA. Although the Seventh Circuit does not appear to have addressed this particular issue, the Tenth Circuit decided a nearly identical issue in *Cirulis v. Unum Corp.*, 321 F.3d 1010 (10th Cir. 2003). Rupert believes *Cirulis* provides persuasive guidance.

In *Cirulis*, like here, an employer announced a merger.  The employee, like Rupert, lost his job as a result of the merger.  The severance plan at issue contained language stating that in order to receive benefits, employees had to sign a "General Agreement and Release."  *Id.*, at 1012.  A week before the plaintiff's termination, he received a copy of the Release.  The Release included a non-solicitation clause that, among other things, prohibited him from soliciting UNUM employees or brokers.  *Id.*, at 1011.  The employee refused to sign the release, and sued for the severance benefits.

After the District Court dismissed the employee's claims, the Tenth Circuit reversed, adopting reasoning that should be compelling here.   The Court noted that the severance plan provided only oblique notice of the proposed restrictive covenants.  It cited United States Supreme Court authority for the proposition that oblique notice doesn't suffice under ERISA:  "A written plan is to be required in order that every employee may, *on examining the plan documents*, determine exactly what his rights and obligations are under the plan."  *Id.*, at 1013, citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995).  The *Cirulis* Court held: "Until he received a copy of the Release, years after the severance plan had been established, Cirulis had *no notice* that severance benefits would be conditioned on this provision.  By failing to provide notice to employees that severance benefits would be conditioned on a non-solicitation provision, the plan administrator's conduct in this case contravenes ERISA's mandate that employee-welfare plans be written so as to provide

employees with notice of their rights and obligations under the plan." *Id.*, at 1014 (citation omitted).

Rupert believes *Cirulis* is squarely on point. *Cirulis* addresses (or at least anticipates) precisely the wrongs that should be righted here: (1) an employer treating severance benefits as a moving target; and (2) an employer trying to hand-cuff an employee with whom it has no non-compete agreement by conditioning valuable severance benefits on the employee signing a non-compete once the employer already has decided to terminate the employee. Both of these tactics are patently unfair.

The Severance Plan in this case provides virtually no indication to an employee that signing a non-compete agreement could or would be a precondition to receiving severance. Rather, the imposition of a non-compete appears to be an effort by Pactiv to obtain a windfall. Pactiv admits it decided whether to insist on non-compete agreements on an ad hoc basis, depending on the employee's position and standing, rather than according to established plan documents. (See SA, 11; App. 323.) Rupert was a valuable employee. He had no non-compete agreement before his termination. Pactiv therefore decided to hold his severance payments hostage in hopes it could exact a non-compete using a $100,000 carrot. It cannot lawfully do this. *See Cirulis,* 321 F.3d at 1015 (ERISA seeks "to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits.") (citation omitted).

Pactiv does not mention *Cirulis* in its brief.  Pactiv does, however, try to avoid the logic and holding by arguing that the Severance Plan in fact gave adequate notice that employees might have to sign non-competes.  *See* Pactiv's brief, at 6, 14.  Rupert applauds Pactiv for this concession, as it effectively means the parties agree that employees/beneficiaries are entitled to adequate notice.  The question then becomes whether Pactiv and the Severance Plan provided such notice — an issue the District Court resolved against them.

The purported notice, in Pactiv's view, wafts from a section of the Plan entitled "Return of Severance Benefits."  Pactiv's brief, at 14; *see also* App. 315-16.  This section states that if an employee breaches the confidentiality portion in a Separation Agreement or any non-compete, non-solicitation or other restriction contained therein, the employee essentially must surrender his or her severance.

This notice is barely different – and certainly no more helpful – than the notice the Tenth Circuit rejected as "oblique" in *Cirulis*.  The reference to a non-compete cryptically appears in a section of the Severance Plan addressing a hypothetical breach.  The reference provides no details about any required non-compete, non-solicitation or other restrictive covenant.  It doesn't specify the duration, geographic scope, industry, or category of employees it might pertain to.  It could embrace a non-compete lasting six months, or it could embrace the employee's lifetime.   Most significant, the language does not permit an employee to determine "exactly" what his rights and obligations are under the Plan.  *Curtis-Wright*, 514 U.S. at 83.

Pactiv and the Severance Plan seemingly acknowledge this problem by arguing that Pactiv's *pre-merger* severance agreements required separation agreements. *See* Pactiv's brief, at 5. This argument begs the question. The pre-merger agreements have no relevance whatever. The case doesn't involve pre-merger agreements. Pactiv's effort to rely on pre-merger agreements underscores the decisive fact that its post-merger commitments contain no similar terms. *See also* Section IV(a) *infra.*

The lone authority Pactiv and the Severance Plan provide to support their reasoning is an unpublished case from the District of Colorado that actually supports Rupert. In *Madison Services Company, LLC v. Gordon*, 2011 WL 1231151 (D. Colo. 2011), a former employee refused to execute a General Release that the employer considered a condition precedent to receiving benefits under a deferred compensation plan governed by ERISA. The plan specified in detail that such a release was required. Accordingly, the plan administrator refused to pay benefits. The Court held that a requirement that a plan participant execute a General Release as a condition precedent to receiving benefits under an ERISA plan is generally lawful. *Id.*, at *10.

The critical takeaway from *Madison Services* is that the General Release in that case did not try to limit the former employee's post-termination right to work. It did not impose a non-compete or non-solicitation provision. The release only asked the employee to release any claims or causes of action he might have. In this regard, the release matched what the employee should have known by reading the plan document. Here, by contrast, an employee

reading the Severance Plan would have no inkling that a non-compete agreement would be required to receive benefits. The clear notice in *Madison Services* is precisely what the District Court found lacking. Thus, *Madison Services* doesn't help Pactiv or the Severance Plan, nor does it in any way limit the holding in *Cirulis*.[2]

As a final point, Rupert notes that the absence of detail in the Severance Plan is particularly troublesome in the context of an Illinois employment relationship, because, as the District Court noted, covenants not-to-compete are "disfavored under Illinois law and may not be implied in employment contracts but must be clearly stated and strictly construed and cannot be overbroad in activity covered, geography or temporal coverage." Opinion, at 13, citing *Zabaneh Franchises, LLC v. Walker*, 972 N.E.2d 344, 349-51 (Ill. App. 4th Dist. 2012); *Triumph Packaging Group v. Ward*, 834 F. Supp. 2d 796, 814-16 (N.D. Ill. 2011); *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 781 (N.D. Ill. 2011). This Court should reject Pactiv's attempt to secure a "disfavored" benefit by blind-siding a displaced employee (Rupert) who already had been promised severance with no strings attached.

## II. The District Court did not rule *Sua Sponte.*

Rupert next will address Pactiv's claim that the District Court decided this case *sua sponte*, meaning, in Pactiv's view, it was deprived of the opportunity to brief the issue of whether Rupert had fair notice regarding the

---

[2] Indeed, because *Madison Services* originates from a district court in the Tenth Circuit, *Madison Services* is bound to follow *Cirulis* and cannot constrain its holding.

non-compete agreement that Pactiv tried to impose at the 11th (perhaps 12th) hour.[3]  *See* Pactiv's brief, at 10; 15-16.  This argument initially overlooks the basic, yet very critical fact that Pactiv is the Plaintiff.  Pactiv sued Rupert to clarify, address, decide, etc. the parties' rights.  Pactiv wanted guidance. Quite the opposite from ruling *sua sponte*, the District Court gave Pactiv exactly the relief Pactiv sought – a judicial determination of the parties' obligations.

The District Court had both the authority and the mandate to issue its Opinion and Judgment.  The Declaratory Judgment Act, which Pactiv invoked, affords relief to parties from uncertainty and insecurity with respect to their legal relations.  *Nucor,* 28 F.3d at 578.  "A party may seek a declaratory judgment to determine whether a particular contract term is binding and need not risk breaching the contract and await a suit."  *Johnson v. McCuskey*, 72 Fed. App'x. 475, 477 (7th Cir. 2003).  Thus, properly seen, the District Court's supposed *sua sponte* ruling really is a direct response to Pactiv's and the Severance Plan's Amended Complaint.

It also bears emphasis that when a District Court considers a motion for summary judgment – another procedure that Pactiv and the Severance Plan invoked – the District Court properly examines the pleadings on file, in addition to the parties' submissions.  *See Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009) (summary judgment is appropriate if the pleadings, discovery and disclosures on file, as well as any affidavits,

---

[3] Pactiv ultimately concedes that this argument makes no practical difference, because the Court of Appeals conducts a de novo review, meaning Pactiv has had the chance to brief the issue in whatever depth it chooses.  *See* Pactiv's brief, at 15-16.

demonstrate that there is no genuine issue of material fact.). The pleadings on file in this case – including Pactiv's Amended Complaint and Rupert's Counterclaim – clearly sought the relief the Court granted, namely a declaration of the parties' rights and responsibilities. For example, Pactiv alleged:

    i.  "According to Rupert, he is entitled to receive severance benefits regardless of whether he signs and does not later revoke a separation agreement and release of all claims." (App. 39, ¶ 11.)

   ii. "Rupert's claim for severance benefits arises solely under ERISA . . ., as it is a claim for benefits provided under an ERISA plan." (App. 40, ¶ 15.)

  iii. "There are actual and justiciable controversies between Plaintiffs and Rupert regarding: (1) whether Rupert has a claim for severance benefits other than under the Severance Plan, or whether the only claim for severance benefits that Rupert may make is for severance benefits under the Severance Plan; … (3) whether to be eligible for severance benefits, Rupert must sign and not later revoke a separation agreement and release of all claims 'in a form acceptable' to Pactiv." (App. 41, ¶ 23.)

  iv. "Resolving this controversy will serve to clarify and settle the legal dispute between the parties, as well as eliminate

uncertainty over their legal rights and obligations." (App. 42, ¶ 29.)

Further, in its prayer for relief, Pactiv asked the Court to declare whether or not Rupert had to sign a separation agreement in order to be eligible for benefits. (App. 42-43.) Rupert sought the same relief. (App. 58-59.)

In sum, by seeking declaratory relief, Pactiv and the Severance Plan opened the door to the possibility that the District Court would reject their theory. They gambled on the chance of a bad outcome. Like the lesson from physics involving the fate of Schrodinger's cat, Pactiv and the Severance Plan asked the Court to explore a situation that otherwise remained uncertain. *See TKO Equipment Co. v. C&G Coal Company, Inc.*, 863 F.2d 541, 545 (7th Cir. 1988) ("In a famous *gedanken* experiment of quantum mechanics, Schrodinger's cat remains suspended between life and death in a box, neither alive nor dead until the box is opened and uncertainty about the decay of a radioactive particle is resolved.") Pactiv and the Severance Plan wanted the District Court to find that Rupert's metaphorical cat – his right to severance benefits – was dead. Having made the request, however, Pactiv has no quarrel that the District Court declared Rupert's cat to be alive and well.

### III.    Rupert did not Disavow or Waive his rights under the Plan.

In its brief, Pactiv repeatedly urges that Rupert somehow waived or disavowed a claim under the Severance Plan. This argument fails at the threshold level based on the nature of the case. Pactiv itself asked the Court to interpret the Severance Plan and declare the parties' rights. Once sued, Rupert

couldn't waive Pactiv's request for resolution. Rupert actually asked for the same relief.

Moreover, although the parties didn't brief the issue in precisely the way the District Court decided it, Rupert didn't waive anything. Waiver requires the intentional relinquishment of a known right, and can only be implied if the party seeking to prove waiver shows that the waiving party took a clear, unequivocal and decisive act manifesting an intention to waive its rights. *Terech v. First Resolution Mgt. Corp.*, 854 F. Supp. 2d 537, 541 (N.D. Ill. 2012). In contrast to waiving his rights, Rupert argued that his benefits effectively vested once Pactiv and RGHL created them under the Merger Agreement, and that the subsequent Severance Plan could not forfeit them, particularly given that Pactiv and the Severance Plan never amended the Merger Agreement. (*See* App. 438, at depo. p. 63:1-11.) It also bears reiteration that Rupert specifically sought declaratory relief under the Severance Plan in his Counterclaim.

## IV. The District Court Erred by Rejecting Rupert's Third Party Beneficiary Claim.

In his cross-appeal, Rupert requests that the Court of Appeals affirm the judgment based on Rupert's theory that he was entitled to benefits as a third-party beneficiary of the Merger Agreement executed by Pactiv and RGHL. This relief matters to Rupert, because it allows additional remedies under the IWPCA. Rupert is entitled to relief because the Merger Agreement promises severance benefits to a particular class of employees of which Rupert is a member. Pactiv and RGHL breached the agreement by: (1) Pactiv failing to

pay the severance; and (2) RGHL failing to ensure Pactiv made the payments. The District Court erred by rejecting this claim.

At the outset, Rupert concedes that, to his knowledge, this claim and legal theory present an issue of first impression in the Seventh Circuit. Regardless, the theory comports with third-party beneficiary law, and it was expressly recognized in *Prouty v. Gores Technology*, 18 Cal. Rptr. 3d 178, 184-86 (Cal. Ct. App. 2004.)

*Prouty*, like this case, involved a corporate merger. The acquiring company promised in a stock purchase agreement to offer employment to employees of the acquired entity. The parties amended the agreement to include a provision that if the acquiring company terminated any employees during the first 150 days after the stock sale, it would pay severance benefits, and also would indemnify the seller (Hewlett-Packard) against any claims related to an employee termination. *Prouty*, 18 Cal. Rptr. 3d at 180. The acquiring party then terminated the employees within a week of closing, and paid them only a limited severance because they, like Rupert, refused to sign a release. The plaintiff employees sued under a theory that they were third-party beneficiaries to the Stock Purchase Agreement.

After the trial court granted summary judgment to the defendant, the Court of Appeals reversed, holding that language in the agreement regarding termination and severance "is a classic third party provision." *Id.*, at 184. The Court found that the provision regarding severance benefits was "patently intended to preclude early termination of the affected employees and

to provide those terminated soon after the closing with severance benefits similar to what they would have received had they been terminated when employed by Hewlett-Packard. *The provision expressly benefits them, and only them.*" *Id.* (emphasis supplied). The Court further found that the seller intended to protect the plaintiffs against immediate termination and loss of severance benefits, hence giving rise to a third-party beneficiary claim. *Id.*, at 185.

While *Prouty* applies California law, the same reasoning and outcome result in this case from applying Delaware law, which governs the Merger Agreement. Under Delaware law, intended third-party beneficiaries have an enforceable right under contracts conferring a benefit to them, even though they are not parties to those contracts. *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *2 (Del. Ch. 2004) (unpublished opinion), citing *Insituform of N. Am., Inc.*, 534 A.2d 257, 268 (Del. Ch. 1987). To qualify as a third party beneficiary of a contract, (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person; and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract. *Madison Realty Partners 7, LLC v. AG ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. 2001). "When a promised performance is rendered directly to the beneficiary, 'it is presumed that the contract was for the beneficiary's benefit.'" *Comrie*, 2004 WL 293337, at *3 (citing Williston on Contracts, § 37:7, at 55; § 37:8, at 70.)

Here, the Merger Agreement creates third-party beneficiary rights, as the promised performance is rendered directly to beneficiaries such as Rupert. Section 6.4(c) of the Merger Agreement promises severance benefits without qualification: "Parent [Reynolds] shall cause the Surviving Corporation [Pactiv] to pay such Non-Union Employee severance benefits as set forth in Section 6.4(d) of the Company Disclosure Schedule." (App. 185.) The obligation to pay severance benefits is unequivocal and mandatory. The Disclosure Schedule confirms the intent, stating, "[a] Non-Union Employee terminated without cause *shall* be paid [severance benefits]." (App. 62, ¶ 1.)

The clear, unambiguous language in Section 6.4(c) shows that the parties identified a specific class of beneficiaries, and intended to confer a direct benefit on them if they were terminated during the continuation period. The employees were to be paid based on their years of service. They are identified by class. The Disclosure Schedule sets forth a method of calculating severance benefits in detail. Performance was to be made directly to the employees. *Comrie*, 2004 WL 293337, at *3. Pactiv cannot identify any reason to include a detailed severance commitment and accompanying Severance Policy except to expressly and directly benefit the affected employees. *See Prouty, supra; see also Halliburton Company Benefits Committee v. Graves*, 463 F.3d 360 (5th Cir. 2006) (former employees allowed to enforce merger agreement provision regarding retiree medical benefits under ERISA theory).

Continuing, the contemporaneous statements of Pactiv's CEO Richard Wambold confirm that Pactiv and Reynolds intended displaced

employees to receive severance benefits. Wambold's statements and policy confirm a donative intent, namely that Pactiv intended to create third-party rights to benefit the displaced employees for their historical service and to cushion their loss of employment. The employees constitute intended beneficiaries.

The analysis doesn't change if the Court analyzes Rupert's theory under Illinois law. Under Illinois law, "[a] party is a direct beneficiary if the contracting parties expressed an intent to confer a benefit upon the third party." *Stamp v. Inamed Corp.*, 777 F. Supp. 623, 625 (N.D. Ill. 1991). The contract's express language and surrounding circumstances at the time of contracting determines whether the parties intended to directly benefit the third party. *Id.* The contract, however, need not name a particular third party beneficiary. *Id.*, citing *F.W. Hempel & Co. v. Metal World, Inc.*, 721 F.2d 610, 613 (7th Cir. 1983). Pactiv and Reynolds clearly intended to benefit displaced employees in the form of providing severance, or they wouldn't have included Section 6.4(c) in the Merger Agreement and Section 6.4(d) in the Disclosure Schedule.

In the proceedings below, Pactiv raised two arguments regarding Rupert's third-party beneficiary claim which Rupert will address as part of this opening brief.

### a. Pactiv's Pre-Merger Severance Agreements are Irrelevant.

Pactiv argued to the District Court that its *pre-merger* severance agreements required employees to sign separation agreements that included

restrictive covenants, meaning the same obligation should be divined in the severance plan created by the Merger Agreement and Disclosure Schedule.

This argument first fails because the Merger Agreement and Disclosure Schedule are subject to a merger or integration clause. (App. 207-08.) This means Pactiv cannot rely on any alleged prior or contemporaneous agreements that contradict the Merger Agreement's express terms. *RTN Investors, LLC v. RETN, LLC*, 2011 WL 862268, at *13 (Del. Super. 2011). Since the express terms of the Merger Agreement say nothing about signing a separation agreement, Pactiv shouldn't be allowed to sneak in such a requirement under the guise of past practice.

Basic contract principles show also that Section 6.4(c) of the Merger Agreement (which creates Rupert's severance rights) has no relationship to Section 6.4(b) (which addresses pre-merger severance agreements). (App. 185.) "Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning." *Alta Berkeley VI, C.V. v. Omneon, Inc.*, 41 A.3d 381, 385-86 (Del. Supr. 2012). "Contract language is not ambiguous merely because the parties dispute what it means. To be ambiguous, a disputed contract term must be fairly or reasonably susceptible to more than one meaning." *Id.* "Further, 'it is well established that a court interpreting any contractual provision . . . must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument.'" *Id.* (citations omitted). "The most important guide to the meaning of a contract is what the words most

naturally convey." *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 2012 WL 1605146, at *26 (Del. Ch. 2012). To the extent ambiguity exists, it is construed against the drafter. *Shiftan v. Morgan Joseph Holdings, Inc.*, 2102 WL 120196, at *5 (Del.Ch. 2012).

Applying these principles, Pactiv's argument regarding pre-merger severance programs identified in Section 6.4(b) has no merit. Rupert doesn't rely on Section 6.4(b). His claims arise under Section 6.4(c). Section 6.4(c) says nothing about displaced employees having to sign separation agreements or restrictive covenants before they can receive severance benefits. The promise is unconditional. Section 6.4(c) says nothing about adopting any terms or conditions from pre-merger severance programs. The plain language leads to the conclusion that Section 6.4(c) means what it says: displaced employees will/shall/must get severance benefits, regardless of what Pactiv's historic programs might have said. *Martin Marietta, supra; see also Alta Berkeley*, 41 A.3d at 388 ("Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty.") (citation omitted).

As a final point, Pactiv's argument on this issue ultimately proves Rupert's point. Pactiv historically knew how to write a severance plan that had conditions. It also knew how to negotiate and write a single-spaced, 50+ page Merger Agreement that contains mind-numbing detail on every legal and financial point imaginable. Yet Pactiv didn't include any of the conditions it

now wants the Court to enforce. This silence speaks as loudly as the dog that didn't bark in the Sherlock Holmes story.[4]

### b. The Third-Party Disclaimer Language Doesn't Control.

Pactiv also argued – and the District Court agreed – that the Merger Agreement's boilerplate provision disclaiming any third-party beneficiary rights means Rupert cannot enforce what Pactiv promised. *See* Opinion, at 10-12 (SA, at 11-13.) This argument fails. *Prouty* addresses it directly. The *Prouty* Court applied the basic contract law principle that specific language in a contract controls general language. The Court observed that the only reason to include a provision protecting employees' rights and/or granting them severance is to directly benefit them and expressly grant them rights. *Prouty*, 121 Cal. App. 4th at 1234-35, 18 Cal. Rptr. 3d at 185.

Delaware law recognizes the same legal principle. "Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." *DCV Holdings, Inc. v. Conagra, Inc.*, 889 A.2d 954, 961 (Del. 2005). Here, the specific language promising severance benefits

---

[4] *See Thomas v. Pierce, Hamilton & Stern*, 967 F. Supp. 507, 508, n. 2 (N.D. Georgia 1997) (A "dog that didn't bark" analogy, so named after the deciding clue in a Sherlock Holmes mystery, is a theory which attempts to prove its own validity based upon the absence of an expected occurrence. In *Silver Blaze*, Sherlock Holmes deduces from a dog's failure to bark that it was the trainer who attempted to harm a valuable horse. Sir Arthur Conan Doyle, *Silver Blaze*, in THE COMPLETE SHERLOCK HOLMES 383, 400 (1953). It is now relatively common to refer to "the dog that didn't bark" as a way of describing the inferences that flow from the failure of the expected to happen. Frederick Schauer, *Liars, Novelists, and the Law of Defamation*, 51 Brook. L. Rev. 233, 241 (Winter, 1985); *see also Chisom v. Roemer*, 501 U.S. 380, n.23, 115 L. Ed. 2d 348, 111 S. Ct. 2354 (1991)).

controls over the more general disclaimer. Otherwise, the promise regarding severance is hollow.

Indeed, Pactiv's position would effectively eradicate the ability for anyone to enforce Section 6.4(c) and the Disclosure Schedule. Assuming Section 6.4(c) and the Disclosure Schedule create rights to severance benefits, then under Pactiv's theory, the only parties who could enforce those rights are Pactiv or RGHL, neither of whom have any reason to do so. The rights only benefit the recipients of severance. Pactiv's argument would rob these beneficiaries of any enforcement mechanism. Because the Court should construe the contract to give effect to every provision, leaving none superfluous, *Alta Berkeley VI*, 41 A.3d at 385-86, the Court should reject Pactiv's argument that no one can enforce Section 6.4(c).

## V. The District Court Erred by Not Awarding Relief under the IWPCA.

In connection with his third-party beneficiary claim, Rupert also seeks relief under the Illinois Wage Payment Collection Act, 820 ILCS 115/1 *et seq.* Rupert believes that once the Court concludes that Pactiv and RGHL owe him severance under the Merger Agreement, he necessarily must prevail on his statutory wage claim, including penalty damages under 820 ILCS 115/14.

First, the promised severance benefits constitute "wages" or "final compensation" as defined by the Act. 820 ILCS 115/2; *Metropolitan Distributors, Inc. v. Illinois Dep't of Labor*, 449 N.E.2d 1000, 1003-04 (Ill. App. 1st Dist. 1983) (severance pay constitutes either wages or final compensation under the IWPCA).

Second, both Pactiv and RGHL fit the definition of "employer," meaning they are jointly and severally liable. *See* 820 ILCS 115/2. The statute defines "employer" to include "any individual, partnership, association, corporation, limited liability company, business trust, employment and labor placement agencies where wage payments are made directly or indirectly by the agency or business for work undertaken by employees under hire to a third party pursuant to a contract between the business or agency with the third party, *or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee,* for which one or more persons is gainfully employed." *Id.* (emphasis supplied).

Pactiv admits it employed Rupert. Pactiv's brief, at 5. That point is given. As for RGHL, the Court should hold it accountable as Rupert's "employer" by virtue of RGHL's commitment as the Parent under the Merger Agreement to ensure that Pactiv would pay the severance. In that role, RGHL acted directly or indirectly in the interest of Pactiv in relation to Rupert. 820 ILCS 115/2. RGHL is separately liable.

## VI. The Merger Agreement Alternatively Constitutes an ERISA Plan.

Rupert also argued below that the Court could and should award him benefits if it treated the Merger Agreement and Disclosure Schedule as an ERISA severance plan, and the Court of Appeals can affirm on this basis. *See Dye v. United States*, 360 F.3d 744, 750 (7th Cir. 2004) ("[W]e are permitted to affirm on any basis identified in the record that was argued below."). Rupert argued this alternative theory to address Pactiv's and the Severance Plan's

argument that ERISA pre-empted Rupert's third-party beneficiary claim under the Merger Agreement.

A beneficiary of an ERISA plan has a statutory right to maintain a civil action to enforce his rights under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B); *Halliburton*, 463 F.3d at 375-76. Therefore, if the Merger Agreement and Disclosure Schedule suffice to create an ERISA plan, Rupert has standing to enforce them.

It is on this narrow point that Rupert argued the Severance Plan had no bearing on his rights. *See* p. 18-19, *supra* (addressing Pactiv's waiver arguments). Pactiv argued that it could avoid any ERISA obligations created by the Merger Agreement and Disclosure Schedule by claiming it retained an unfettered right to amend the plan, including amending it to add a requirement via the Severance Plan that an eligible employee such as Rupert must sign a Separation Agreement. This argument failed below, and should meet the same fate on appeal, because Pactiv did not retain a right to amend the plan, and in any event Pactiv never amended the plan.

In order to amend a welfare benefit plan governed by ERISA, the employer must provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan. 29 U.S.C. § 1102(b)(3). In interpreting this statutory section, the Supreme Court has stated: "The test of § 402(b)(3) actually requires two things: a 'procedure for amending [the] plan" and '[a procedure] for identifying the persons who have authority to amend the plan.'" *Curtiss-Wright*, 514 U.S. at 80 (punctuation and

italics original).  Only an amendment executed in accordance with the plan's procedures is effective.  *Halliburton,* 463 F.3d at 372, (citing *Williams v. Plumbers & Steamfitters Local 60 Pension Plan,* 48 F.3d 923, 926 (5th Cir. 1995)).

The Merger Agreement and Disclosure Schedule contain no procedure for amending the severance plan created under Section 6.4(c), nor do they contain a procedure for identifying the persons who have authority to amend the plan.  As such, assuming the Merger Agreement and Disclosure Schedule create an ERISA plan, Pactiv has no legal basis to amend the plan, including no right to condition severance benefits on employees submitting to restrictive covenants.  The 2010/2011 Severance Plan therefore is irrelevant, at least regarding Rupert's claim for relief under the Merger Agreement.

Finally, even if Pactiv could be heard to claim a right to amend the severance plan created by the Merger Agreement and Disclosure Schedule, Pactiv has not offered any evidence that it did, in fact, effect such an amendment.  To be effective, Pactiv would have needed to execute the amendment before it terminated Rupert's employment.  Pactiv has not identified any evidence to show that it executed any amendment to the Plan consistent with an amendment process contained in the Merger Agreement or Severance Policy.

## Conclusion

Rupert respectively requests that the Court of Appeals: (1) affirm the District Court's Opinion and Judgment and remand the matter to allow

Rupert to file his Application for Attorney's Fees; and (2) remand for entry of judgment on Rupert's counterclaims asserting a third-party beneficiary claim and relief under the Illinois Wage Payment Collection Act, including penalty damages and attorney's fees; or (3) in the alternative, remand for entry of judgment on Rupert's alternative claim for relief under ERISA as applied to the Merger Agreement.

Respectfully submitted,

_____/s/ Vernon P. Squires_____
VERNON P. SQUIRES (#LI0014929)
    of
BRADLEY & RILEY PC
2007 First Avenue SE
P.O. Box 2804
Cedar Rapids, IA  52406-2804
Phone:      (319) 363-0101
Direct Dial: (319) 861-8726
Fax:  (319) 363-9824
Email:      vsquires@bradleyriley.com

*ATTORNEYS FOR THE*
*DEFENDANT/COUNTERCLAIM-*
*PLAINTIFF/APPELLEE/CROSS-APPELLANT*
*CHAD RUPERT*

JAMES B. CARROLL, ESQ.
Standard Bank Building
7800 West 95th Street
Second Floor East
Hickory Hills, IL  60457

*LOCAL COUNSEL FOR*
*DEFENDANT/COUNTERCLAIM-*
*PLAINTIFF/APPELLEE/CROSS-APPELLANT*
*CHAD RUPERT*

## Certificate of Compliance with F.R.A.P. 32(A)(7)

1. This brief complies with the type-volume limitation of <u>Fed. R. App. P. 32(a)(7)(B)</u> because:

 X this brief contains 7,411 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

__this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the type style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because:

 X this brief has been prepared in a proportionally spaced typeface using Word 2007 in Bookman Old Style, Font 12 or

__this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated: March 21, 2013.　　　　*/s/ Vernon P. Squires*
　　　　　　　　　　　　　　　Attorney for Defendant/Counterclaim Plaintiff-
　　　　　　　　　　　　　　　Appellee/Cross-Appellant, Chad Rupert

**Certificate of Service**

I hereby certify that on March 21, 2013, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Peter J. Rusthoven
Bart A. Karwath
Barnes & Thornburg, LLP
11 South Meridian Street
Indianapolis, Indiana 46204

Norma W. Zeitler
Christine E. Skoczylas
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606

_____/s/ Vernon P. Squires_____
Vernon P. Squires

**Circuit Rule 30(d) Certificate**

In compliance with Circuit Rule 30(d), I certify that the Short

Appendix included and bound with this Brief of Appellee/Cross-Appellant

includes all materials required to be so included by Circuit Rule 30(a). All

citations in this Brief are to materials contained in Appellants/Cross-Appellees'

Appendix.


_____/s/ *Vernon P. Squires*_____

Vernon P. Squires

## Short Appendix

## Table of Contents

**Page**

Judgment in a Civil Action filed 11/1/2012 ...............................................1

Opinion and Order filed 11/1/2012 .........................................................2

Amended Judgment in a Civil Action filed 12/11/2012 .............................18

*uЄЄ*

# UNITED STATES DISTRICT COURT
### for the

## Northern District of Illinois

| | | |
|---|---|---|
| Pactiv Corporation, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   11 C 7247 |
| Chad Rupert | ) | |
| *Defendant* | ) | |

### JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the

defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment

interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____

☒ other:

Final judgment is entered as follows: (1) in favor of defendant-counterplaintiff and against plaintiffs-

counterdefendants (a) declaring that Chad Rupert is entitled to severance benefits under the Pactiv

Corporation 2010/2011 Severance Benefits Plan without being required to enter into a non-competition

agreement; (b) awarding Chad Rupert $99,676.58 against Pactiv Corporation and Reynolds Group

Holdings, Ltd.; jointly and severally, and (c) dismissing plaintiffs' cause of action with prejudice and (2) in

favor of counterdefendants and against counterplaintiff dismissing counterplaintiff's third-party

beneficiary and Illinois Wage Payment and Collection Act claims with prejudice.

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision was reached.

☒ decided by Judge   William T. Hart _____ on motions for   summary judgment.

Date:   Nov. 1, 2012                    Thomas G. Bruton, Clerk of Court

                                        /S/ Carol Wing, Deputy Clerk

**App. 1**



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PACTIV CORPORATION, and )
PACTIV CORPORATION 2010/2011 )
SEVERANCE BENEFITS PLAN, )
                         )
           Plaintiffs, )
                         )
    v. )
                         )
CHAD RUPERT, )
                         )
           Defendant. )
_____ )    No. 11 C 7247
CHAD RUPERT, )
                         )
           Counterclaim-Plaintiff, )
                         )
    v. )
                         )
PACTIV CORPORATION, )
PACTIV CORPORATION 2010/2011 )
SEVERANCE BENEFITS PLAN, and )
REYNOLDS GROUP HOLDINGS, LTD., )
                         )
           Counterclaim-Defendants. )

## OPINION AND ORDER

Plaintiffs Pactiv Corporation ("Pactiv") and the Pactiv Corporation

2010/2011 Severance Benefits Plan (the "Plan"), an employee benefits plan

subject to the provisions of the Employee Retirement Income Security Act of

1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), brought this action for declaratory relief alleging that defendant Chad Rupert ("Rupert") has no right or claim for employment severance benefits because he refused to sign a release of claims containing a non-competition undertaking. Rupert filed a counterclaim for declaratory and monetary relief against Pactiv, the Plan and counterclaim defendant Reynolds Group Holdings, Ltd. ("Reynolds") claiming that under the terms of a merger agreement between Pactiv and Reynolds, Rupert became entitled to unconditional severance benefits as a third-party beneficiary of a merger agreement that existed prior to the adoption of the Plan. Rupert seeks relief under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115, and alternatively under ERISA. Pactiv replies that Rupert is not a third-party beneficiary of the merger agreement and that ERISA preempts the Illinois statute.

The parties agree the Plan is an ERISA benefit plan and also agree that the merger agreement is not itself a plan under ERISA. Plaintiffs claim for declaratory relief that the Plan applies and that they may condition payment of severance benefits on agreeing to a non-competition provision would fall under ERISA jurisdiction. *See* 29 U.S.C. §§ 1132(a)(3), 1132(e). Even if there is no jurisdiction under ERISA, there apparently would be diversity jurisdiction.

- 2 -

Plaintiff Pactiv is a Delaware corporation with it principal place of business in Illinois. Defendant Rupert, who was employed in Illinois, was a resident and citizen of Iowa at the time this action was filed. The amount in controversy exceeds $75,000. For diversity purposes, an ERISA plan's citizenship is ordinarily that of its trustee. *May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 599 (7th Cir. 2002). In this case, though, the Plan is not a trust, it is an unfunded plan that pays benefits out of the general assets of Pactiv. *See Fenwick v. Merrill Lynch & Co.*, 2009 WL 995760 *3 (D. Conn. April 9, 2009); *In re Washington Mut., Inc.*, 450 B.R. 490, 503 (Bankr. D. Del. 2011). The Plan also is not an unincorporated association with members for which citizenship would be that of its members. No case has been found discussing the determination of the citizenship of this type of ERISA plan. Pactiv is the Plan's sponsor and administrator, so the Plan's citizenship presumably would be the same as that of Pactiv. Under ERISA, this court has jurisdiction over plaintiffs' Complaint. Alternatively, there would also appear to be diversity jurisdiction. Since there is jurisdiction over plaintiffs' complaint, there is jurisdiction over Rupert's counterclaims as well.

Both sides contend that the facts are not in dispute. The case is now before the court on cross motions for summary judgment. On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he or it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly

- 4 -

disputed facts if those facts are not plausible in light of the entire record. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95 (7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010).

For purposes of each side's motion for summary judgment, the following facts are undisputed. Rupert worked for Pactiv for eleven years. At the time of his termination in July 2011, he was general manager of its Slide-Rite Closure division in Illinois.

On November 16, 2010, the stockholders of Pactiv approved a merger agreement, the effect of which made Pactiv an indirect, wholly owned subsidiary of Reynolds. Pursuant to the terms of Section 6(c) of the merger agreement the parties agreed to provide, for a period of one year, employee salary and benefits equal to those existing immediately prior to the effective date of the merger. Pactiv's severance benefits were required by the merger agreement to be set forth in a disclosure statement which became Section 6.4(d) (Severance Policy) of the merger agreement. Section 6.4(d) provides, in pertinent part, as follows:

1.     A Non-Union Employee terminated without
       cause shall be paid, in addition to all amounts

accrued or required by law to be paid, a sum
equal to (i) the number of years such Non-Union
Employee has been employed by the company (or
its Affiliates, including entities acquired by the
Company), rounded to the nearest month <u>times</u>
two (such number the "<u>Severance Period</u>") <u>times</u>
(ii) such Non-Union Employee's weekly
compensation, provided the amount computed by
clause (i) shall not be less than four nor greater
than 26.

2. If such Non-Union Employee is eligible for an
annual bonus in the year of termination, such
person shall be paid a pro-rated amount of his or
her bonus, at "target" if such bonus is incentive
based, as well as any accrued but unpaid
bonuses.

Section 9.6 of the merger agreement contains a clause stating that all

disclosures are complete (there are no other oral or written terms or conditions)

and that the merger agreement and disclosure schedules, with certain specific

exceptions, "are not intended to confer upon any Person other than the parties

hereto any rights or remedies hereunder." Section 9.8 of the merger agreement

provides the agreement will be construed in accordance with Delaware contract

law.

After the merger, on December 1, 2010, Pactiv adopted the Plan. It is an

unfunded welfare benefit severance plan subject to ERISA. The Plan expressly

App. 7

provides that it is governed by Illinois law except to the extent such law is

preempted by ERISA. The Plan document states that it serves as the summary and

description of the Plan and for all purposes under ERISA. The Plan document

states the same severance benefits set forth in the merger agreement and also

contains the following provision:

> To receive severance pay and benefits under the Plan and
> unless provided for otherwise in an applicable appendix, an
> eligible employee must submit to the Plan Administrator
> (defined below) a signed Separation Agreement within the
> consideration period set forth in the Separation Agreement,
> but not before his or her Separation Date. The Separation
> Agreement shall be **in a form acceptable to the Company**,
> and shall be provided to the eligible employee in connection
> with the eligible employee's termination of employment under
> this Plan.

(Emphasis Supplied.)

> The Plan also provides:

> An eligible employee has no vested right to severance pay or
> benefits under the Plan. The Company reserves the right in its
> sole discretion to amend or terminate the Plan at any time.
> The Plan may be amended in any respect at any time,
> retroactively or otherwise, by the Vice President and Chief
> Human Resources Officer, in writing. Notwithstanding the
> foregoing, no Plan amendment may retroactively reduce the
> benefits to which an eligible employee was entitled under the
> Plan as of his or her Separation Date.

App. 8

After the adoption of the Plan, Pactiv terminated Rupert's employment
without cause because he declined to relocate to Appleton, Wisconsin. It is
undisputed that he then became eligible for severance benefits. On his last date of
employment, Rupert was informed that, in order to receive severance benefits, he
was required to sign a document entitled "Separation Agreement and Release of
All Claims" that contained a non-competition undertaking that reads as follows:

12. **Restrictive Covenants**

a.    For a period of one (1) year following the
Separation Date, Employee shall not directly or indirectly, on
behalf of Employee or any other person, company or entity:

i. participate in the research and/or development
of any products or services that are similar to, or
competitive with any products or services for which
Employee had direct or indirect product or service
research or development responsibilities while working
at Company.
ii. provide services to any person or entity that
engages in any business that is similar to, or
competitive with, Company's business if doing so
would require Employee to inevitably use or disclose
Company's Confidential Information.
iii. solicit the sale of, sell, or otherwise provide
any products or services that are similar to or
competitive with products or services offered by,
manufactured by, designed by, or distributed by
Company, to any person, company or entity which was
a customer or potential customer of Company for such
products or services and with whom Employee had

direct contact or about whom Employee learned
Confidential Information regarding those products or
services at any time during his employment with
Company.

iv. hire, solicit, attempt to persuade or
communicate with any employee of Company, or any
person who was an employee of Company during the
twelve (12) months prior to the Separation Date, to
leave the employ of Company or otherwise interfere
with the performance of their duties for Company.

b.     Company may, in its sole discretion, permit
Employee to engage in certain work or activity described in
this paragraph 12, if and only if Employee first provides
Company with written evidence satisfactory to Company,
including assurances from any new employer, that the
contribution of Employee's knowledge to that work or activity
will not cause Employee to disclose, base judgment upon, or
use Company's Confidential Information, Employee shall not
engage in such work or activity unless and until Employee
receives written consent from Company.

The proposed Separation Agreement provides that Rupert is not
required to sign it and will still receive pension benefits, insurance he is otherwise
entitled to receive and payment for unused vacation time regardless of whether he
signs it.  However, it also provides that he can only receive severance pay if he
signs the agreement and that any such payments will be forfeited if the agreement
is subsequently breached.

It is undisputed that a non-competition restrictive covenant was never a condition of Rupert's employment with Pactiv. The first mention of such an undertaking was at the time of his termination. The proposed Separation Agreement was first provided to Rupert on July 29, 2011, which was his date of termination. The non-competition provisions were included at the direction of Mark Kitzis, vice-president and general manager of Specialty Business for Reynolds Presto Products Inc. Kitzis stated in a declaration: "Due to the nature of Mr. Rupert's position and the knowledge he possessed, I determined that it was necessary to include restrictive covenants in Mr. Rupert's Separation Agreement and Release of All Claims. I considered the requests Mr. Rupert made to narrow the scope of the restrictive covenants. However, Pactiv and Mr. Rupert were not able to reach agreement on the scope of the restrictive covenants." The additional discussions occurred after Rupert's employment was terminated. The proposed Separation Agreement was unsigned, but had a signature line for Jerry Lindsey, who was a "Senior Manager" in Human Resources at the time.

The first question to be considered is Rupert's standing as a third-party beneficiary under the Pactiv merger agreement.[1] Relying on a California case,

---

[1]As is discussed below, Rupert is entitled to severance benefits under the Plan. The severance benefits are the same dollar amount under either the

*Prouty v. Gores Tech. Group,* 18 Cal. Rpt. 3d 178, 184-86 (Cal. App. 2004), and

an ERISA case, *Halliburton Co. Benefits Comm. v. Graves,* 463 F.3d 360

(5th Cir. 2006), *clarified,* 479 F.3d 360 (5th Cir. 2007), Rupert claims third-party

beneficiary rights can exist notwithstanding an express provision to the contrary in

a merger agreement. These cases do offer some support for ignoring a clause

disclaiming third-party beneficiary rights in cases involving benefit claims.

However, each of the cases presents a different factual background. In *Prouty,*

despite the third-party disclaimer language, other language in the pertinent

documents expressed an intent to benefit third parties and there was also testimony

of one of the merger parties that there was specific intent to protect such

beneficiaries. In *Halliburton,* the action was brought under ERISA to establish

benefit rights under an amended ERISA plan, not third-party rights under the

related merger agreement. *See id.,* 463 F.3d at 375-76. In the present case,

Delaware law applies.

Under Delaware law, enforceable third-party benefits require, among

other things, that "the intent to benefit the third party must be a material part of the

---

merger agreement or the Plan. An IWPCA claim, though, provides for penalties
and also has a different attorney fees standard than under ERISA. Therefore, it is
necessary to resolve the state law claims.

parties' purpose in entering into the contract." *Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2008 WL 4182998 *4 (Del. Ch. Sept. 11, 2008) (quoting *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268 *5 (Del. Ch. April 17, 2001), quoted in *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337 *2 (Del. Ch. Feb. 17, 2004)). A general disclaimer of third-party benefits can be overcome if there is a specific grant of benefits to a third-party that was central to the transaction (*e.g.*, a shareholder or member of a merging entity) and not just incidental to the transaction. *Amirsaleh*, 2008 WL 4182998 at *5. Here, the principal purpose of the agreement was the merger of two companies, with employee benefits being incidental to the merger. Also, while there is a general third-party disclaimer in § 9.6(b) of the merger agreement, it also specifically identifies those provisions in the merger agreement for which third-party benefits are not disclaimed. Severance benefits are not excluded from the disclaimer. The merger agreement does not provide for severance benefits that are enforceable by an employee. Rupert has no claim directly under the merger agreement.

Plaintiffs contend any IWPCA claim is preempted by ERISA. If Rupert's IWPCA claim was based on the terms of the Plan that would likely be true. Rupert's IWPCA claim, though, is based on the severance provisions of the

- 12 -

merger agreement. Since Rupert has no enforceable rights under the merger agreement, his IWPCA claim also fails on the merits.

Covenants-not-to-compete are limitations on the ability to work. They are disfavored under Illinois law and may not be implied in employment contracts but must be clearly stated and strictly construed and cannot be overbroad in activity covered, geography or temporal coverage. *See Zabaneh Franchises, LLC v. Walker*, 972 N.E.2d 344, 349-51 (Ill. App. 4th Dist. 2012); *Triumph Packaging Group v. Ward*, 834 F. Supp. 2d 796, 814-16 (N.D. Ill. 2011); *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 781 (N.D. Ill. 2011).[2] The ERISA Plan document on which Pactiv relies to impose a future non-competition undertaking as a condition to receiving benefits does not authorize or require such an obligation.

Reserving the right to have a separation agreement in a "form acceptable to the Company" is not notice to an ERISA beneficiary that a non-competition covenant could be required as a condition to receive benefits. What is here proposed is not a matter of "form;" it is a substantial limitation. Based on the

---

[2]It is unnecessary to decide whether, despite the Plan's express adoption of Illinois law, federal common law applies and, if so, whether it is any different from Illinois law. As set forth below, ERISA requires that the terms of a plan and any amendment be in writing.

- 13 -

Pactiv declarations, it clearly appears that an officer decided to impose the clause because of Rupert's occupation. ERISA plans are not subject to ad hoc interpretation or amendment; the terms of an ERISA plan must be stated in writing. 29 U.S.C. §1102(a); *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 817-18 (7th Cir. 2010); *Bandak v. Eli Lilly & Co. Ret. Plan*, 587 F.3d 798, 802 (7th Cir. 2009). Plaintiffs contend Rupert had no vested interest in the severance benefits and the Plan could be amended. Plaintiffs, though, point to no actual written amendment to the Plan. At most, they can rely on the proposed Separation Agreement which was in writing. The Separation Agreement itself is not an amendment. Morever, it is not a writing of a Vice President and Chief Human Resources Officer, who would be the person or persons authorized to make an amendment. To the extent a subsequent amendment occurred, it would not apply to Rupert. The Plan expressly provides that amendments reducing severance benefits do not apply retroactively; an employee is entitled to enforce the terms of the Plan in effect on the last day of his or her employment.

Under the written terms of the Plan in effect on Rupert's last date of employment, he was not required to agree to a non-compete clause in order to be

- 14 -

App. 15

entitled to the severance benefits provided for in the Plan. Rupert is entitled to a declaratory judgment stating his entitlement to severance benefits under the Plan without undertaking a non-competition covenant. He is also entitled to a monetary judgment awarding him the benefits. It is undisputed that Rupert's severance benefits, based on years, salary and bonuses, would be a total of $99,676.58.

To the extent Rupert is seeking prejudgment interest, he must move to amend the judgment within the time permitted by Fed. R. Civ. P. 59(e). Unless by agreed motion with counterdefendants, Rupert must support any such request with a computation of prejudgment interest as well as a legal argument that he is entitled to prejudgment interest. *See Fritcher v. Health Care Serv. Corp.,* 301 F.3d 811, 820 (7th Cir. 2002); *Holmstrom v. Metro. Life Ins. Co.,* 615 F.3d 758, 779 (7th Cir. 2010).

Since Rupert had some degree of success on his ERISA counterclaim, he could be entitled to attorney fees if plaintiffs' position was not substantially justified. *See* 29 U.S.C. 1132(g); *Hakim v. Accenture U.S. Pension Plan,* 2012 WL 4738980 *3-4 (N.D. Ill. Oct. 3, 2012). Any motion for attorney fees must comply with the procedural requirements and time limits set forth in Local Rule 54.3.

- 15 -

App. 16

IT IS THEREFORE ORDERED that the cross motions for summary judgment [34, 39] are each granted in part and denied in part. The Clerk of the Court is directed to enter final judgment as follows: (1) in favor of defendant-counterplaintiff and against plaintiffs-counterdefendants (a) declaring that Chad Rupert is entitled to severance benefits under the Pactiv Corporation 2010/2011 Severance Benefits Plan without being required to enter into a non-competition agreement; (b) awarding Chad Rupert $99,676.58 against Pactiv Corporation and Reynolds Group Holdings, Ltd.; and (c) dismissing plaintiffs' cause of action with prejudice and (2) in favor of counterdefendants and against counterplaintiff dismissing counterplaintiff's third-party beneficiary and Illinois Wage Payment and Collection Act claims with prejudice.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER    /    , 2012

- 16 -

App. 17

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

## Northern District of Illinois

| | | | |
|---|---|---|---|
| Pactiv Corporation, et al | ) | | |
| *Plaintiff* | ) | | |
| v. | ) | Civil Action No. | 11 C 7247 |
| Chad Rupert | ) | | |
| *Defendant* | ) | | |

## AMENDED JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the

defendant *(name)* _____ the amount of

_____ dollars ($ _____ ), which includes prejudgment

interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____

recover costs from the plaintiff *(name)* _____

☒ other:

that final judgment is entered as follows: in favor of defendant-counterplaintiff and against plaintiffs-

counterdefendants(a) declaring that Chad Rupert is entitled to severance benefits under the Pactiv

Corporation 2010/2011 Severance Benefits Plan without being required to enter into a non-

competition agreement;(b) awarding Chad Rupert $103,770.26 against Pactiv Corporation and

Reynolds Group Holdings, Ltd.; jointly and severally, and (c)dismissing plaintiffs' cause of action

with prejudice and (2) in favor of counterdefendants and against counterplaintiff dismissing

counterplaintiff's third-party beneficiary and Illinois Wage Payment and Collection Act claims with

prejudice.

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision
was reached.

☒ decided by Judge    William T. Hart _____ on a motions or   summary judgment

.

| | |
|---|---|
| Date: _____ Dec 11, 2012 _____ | Thomas G. Bruton, Clerk of Court |
| | /S/ Terry Perdue, Deputy Clerk |

# App. 18